


APR 2 8 2005

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LENIN GARCIA,

    Plaintiff,

    v.

J. ABATTI-HARLOW, *et al.*,

    Defendants.

NO. CV-F-01-5195-RHW-WMW-P

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

    Before the Court is Defendants' Motion to Dismiss under the "nonenumerated" portion of Federal Rule of Civil Procedure 12(b). Defendants argue that Plaintiff's 42 U.S.C. § 1983 claim is premature as he has failed to exhaust all administrative remedies prior to filing his complaint, pursuant to 42 U.S.C. § 1997e. Since Plaintiff is proceeding *pro se*, the Court will liberally construe all of his claims for relief. *Ortez v. Washington County*, 88 F.3d 804, 807 (9th Cir. 1996). The Court grants Defendants' Motion to Dismiss.

## BACKGROUND

    On February 21, 2001, Plaintiff filed a Complaint *in forma pauperis* under 42 U.S.C. § 1983, acting *pro se*. (Ct. Rec. 1). The complaint alleged the Defendants violated his civil rights by denying his request to be housed with inmates of like ethnicity, retaliating against him for filing grievances, and acting with deliberate indifference to his medical condition in refusing him a lower bunk (Ct. Rec. 1, 17). Plaintiff then filed an Amended Complaint on December 3, 2001, which this Court dismissed partially with and without prejudice on February 10,

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 1

1  2003, ordering Plaintiff to submit a Second Amended Complaint (Ct. Rec. 16).
2  Plaintiff's Second Amended Complaint was filed on March 7, 2003 (Ct. Rec. 17).
3  The Court then directed service on the Second Amended Complaint and screened
4  Plaintiff's complaint in accordance with 28 U.S.C. § 1915A (Ct. Rec. 18).
5        The Court found cognizable claims of relief under 42 U.S.C. § 1983 against
6  Defendants Abatti-Harlow, Fouch, Vasquez, Ursenbach, and Hernandez for
7  alleged retaliation and denial of equal protection, and against Defendants Barrier,
8  Rossiter, Haskins, and Davis for alleged deliberate indifference (Ct. Rec. 18).
9  Defendants filed this Motion to Dismiss on August 26, 2003 (Ct. Rec. 42).  On
10 September 17, 2003, Plaintiff filed a Memorandum of Opposition Motion to
11 Defendants' Motion to Dismiss (Ct. Rec. 49).
12       Defendants opposed this filing as untimely, and moved the Court to not
13 consider Plaintiff's reply or, in the alternative, to grant the Defendants sixty days
14 to file a reply brief (Ct. Rec. 51).  The Court found that Plaintiff's Memorandum in
15 Opposition was timely filed, but granted the Defendants' request for sixty days to
16 reply (Ct. Rec. 52).  On February 7, 2005, Defendants timely filed their response
17 to Plaintiff's Memorandum in Opposition (Ct. Rec. 53).

## FACTS

19       Plaintiff's Complaint alleges several violations of his civil rights stemming
20 from the Defendants' actions in the course of their employment as Correctional
21 Officers (CO's) for the California Department of Corrections (CDC) (Ct. Rec. 17).
22 Plaintiff's complaint includes several departmental appeals forms outlining the
23 nature of the acts alleged and the internal, non-judicial remedies Plaintiff has
24 already pursued in regard to those actions.  *Id.*  Plaintiff administratively appealed
25 CDC actions regarding the ethnicity of the cellmate he was assigned, alleged
26 retaliation from CO's, and failure to recognize his medical need to be assigned to a
27 lower bunk.  *Id.*  Additionally, Plaintiff included appeals in his complaint that
28 appear to have no relation to the instant case.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 2

## I. PLAINTIFF'S HOUSING APPEALS

Plaintiff filed numerous appeals challenging the CDC's decision to house him with a cellmate of a different ethnicity then his own. Initially, Plaintiff's formal appeal (to be housed solely with inmates of like, Puerto Rican, ethnicity, or those whose ethnicity was designated as "other") was partially granted by the California State Prison - Sacramento on November 14, 1997 (Ct. Rec. 17, Ex. B). Partial grant of Plaintiff's appeal indicated the policy of the prison to house inmates of like ethnicity as a "primary housing consideration," and his request was granted in accordance with this policy. *Id.* The record does not describe the original appeal resulting in this action, or when it was submitted. *Id.*

On February 17, 2000, Plaintiff was incarcerated at the Corcoran Substance Abuse Treatment Facility (Corcoran) (Ct. Rec. 17). Plaintiff verbally requested that he not be housed with an inmate of Mexican ethnicity, who was presented as his new cellmate. *Id.* Defendants CO Vasquez and CO Ursenbach refused Plaintiff's request, informing him he would be moved to administrative segregation ("the hole") if he refused to accept the new cellmate. *Id.* Later (there is no date indicated in the record) Plaintiff provided a copy of the partially-granted request from Sacramento to the Correctional Officers at Corcoran, who continued to deny his verbal housing request.

Plaintiff was then interviewed by Defendants, CO Abatti-Harlow and CO Fouch (Ct. Rec. 17). Again, the record does not indicate the date of this meeting, or if it constituted the "informal" level of appeal pursuant to CAL. CODE REGS. tit. 15 § 3084.5(a). *Id.* After the interview, Defendant CO Abatti-Harlow informed Plaintiff that if he did not accept the Mexican inmate, he would be placed in administrative segregation. *Id.* Plaintiff continued to refuse the housing assignment and, on approximately February 17, 2000, he was placed in administrative segregation and relieved of his prison job and pay grade. *Id.*

On February 20, 2000, Plaintiff formally appealed Defendants' decision

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 3

refusing his housing requests (Ct. Rec. 11, Ex. C). Plaintiff's appeal requested that: (1) he be removed from administrative segregation and returned to his job and pay grade; and (2) he be housed with inmates of like ethnicity (or other), and that such inmates not smoke or be infected with hepatitis. *Id.* Plaintiff's appeal was reviewed at all levels of formal review, up to and including the final "Director's level" review. *Id.* At the first level of review, Plaintiff's request to be removed from administrative segregation was granted on March 31, 2000 (Ct. Rec. 11, Ex. C). However, at all levels of review, the remainder of Plaintiff's appeal was denied on the following grounds: (1) no smoking is allowed inside prison buildings and whether a cellmate smokes or not is immaterial; (2) those prisoners with hepatitis who lived in the general population were cleared to do so by prison physicians; (3) that he lost his pay grade and job due to his behavior toward CO's, not because of his housing request; and (4) housing decisions were based on safety, not racism. *Id.* Additionally, Plaintiff was informed that it was the CDC's policy to discourage racism. *Id.* Plaintiff's requests were denied at the Second Formal level of review on May 18, 2000, and at the Director's level on December 11, 2000 (Ct. Rec. 17, Ex. C)

## II.   PLAINTIFF'S RETALIATION APPEALS

After Plaintiff's release from administrative segregation, and during his appeals process (no specific dates are given in the record), Plaintiff alleged he suffered retaliation from Defendants Hernandez, Abatti-Harlow, Fouch, Ursenbach, and Vasquez for filing appeals generally and specifically regarding their decision refusing his housing requests (Ct. Rec. 17). Plaintiff's complaint alleges that his yard privileges were revoked, and he was generally threatened and verbally abused as a result of his participation in the appeals process. *Id.* Plaintiff filed appeals regarding the retaliation. *Id.*

//

//

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 4

Appeal No. 00-1201[1], submitted May, 5, 2000, alleged retaliatory deprivation of Plaintiff's outdoor (yard) privileges, and threats, specifically by Defendant Hernandez (Ct. Rec. 17, Ex. E). At the First Formal Level of review, Appeal No. 00-1201 was denied after the prison administration found no evidence of retaliation (Ct. Rec. 17, Ex. E). Plaintiff submitted this appeal to the Second Formal Level on April, 26, 2000, but never submitted an appeal beyond the Second Level review. *Id.* Plaintiff argues he was unable to respond to a Second Formal Level review decision because he was transferred to a new facility prior to the decision being made (Ct. Rec. 49).

### III.  PLAINTIFF'S MEDICAL APPEAL

In a separate matter, Plaintiff appealed the Defendants' refusal to assign him a lower bunk, based on his medical condition (Ct. Rec. 17). On approximately January 14, 2000, Plaintiff requested a lower bunk for a medical condition of a bad back, resulting from wounds he suffered prior to incarceration, but his request was denied by Dr. Nguyen (Ct. Rec. 11, Ex. O). In Appeal No. 00-00239, on January 14, 2000, Plaintiff appealed Dr. Nguyen's refusal to provide him with a lower bunk. *Id.* Plaintiff's request to be assigned to a lower bunk was granted at the First Formal Level. *Id.*

Plaintiff alleges that subsequently, on or about April 23, 2000, after a cell transfer, Defendants, CO Haskins, CO Rossitor, CO Davis, and CO Barrier, all refused to comply with his granted request to be assigned only to a bottom bunk, and he was thereafter assigned to a top bunk (Ct. Rec. 17). Plaintiff alleges that he

---

[1]Plaintiff's Second Amended Complaint included an Appeal No. 1200, which also complained of retaliation (Ct. Rec. 17, ex. E). However, in his Memorandum of Opposition Motion to Defendants' Motion to Dismiss, Plaintiff states that Appeal No. 1200 is not in relation to Defendant Hernandez, and is not in regard to a named defendant in this suit (Ct. Rec. 51). Appeal No. 00-1200 was not exhausted through a Director's level review (Ct. Rec. 17, Ex. Q).

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 5

submitted an appeal of the denial, on May 11, 2000 (Ct. Rec. 17, Ex. H).

This grievance was recorded in an unnumbered Appeals form, included in Plaintiff's Second Amended Complaint as "Exhibit H." *Id.* It appears as though this appeal was never filed as it displays no internal appeal number, signature, date stamp, or any other indicator that it was received by Prison Officials (Ct. Rec. 17, ex. H). Moreover, even if it was submitted, there is no evidence that it was reviewed at even the First Formal Level (Ct. Rec. 17, ex. H).

### IV.  PLAINTIFF'S UNRELATED APPEALS

Finally, Plaintiff includes as exhibits in his Complaint several appeals forms that appear to have no bearing on the instant case (Ct. Rec. 17, ex. M, N). Appeals No. 99-03519 and 99-03444 are in regard to complaints on behalf of other inmates for inadequate yard and visitation privileges and Officers' tampering with Plaintiff's legal mail (Ct. Rec. 17, ex. M, N). Neither involve allegations asserted in Plaintiff's Second Amended Complaint, and have no apparent bearing on the case at hand (Ct. Rec. 17, ex. M, N). Additionally, neither complaint appears to have passed beyond the First Formal Level of appeal (Ct. Rec. 17, ex. M, N). Similarly, Appeal No. 00-1880 is a grievance against a "Captain Johnson" for retaliation and abuse of authority (Ct. Rec. 17, ex. Q). It is not clear if this appeal relates to his Retaliation claim against the named defendants, and even if it was, this appeal has not passed through the First Formal Level of review (Ct. Rec. 17, ex. R).

## DISCUSSION

### I.  *PRO SE* LITIGANT

Since Plaintiff is proceeding *pro se*, the Court will liberally construe all of his claims for relief. *Ortez v. Washington County*, 88 F.3d 804, 807 (9th Cir. 1996).

### II.  DEFENDANTS' MOTION TO DISMISS

The Court must determine whether: (1) Plaintiff's Appeal No. 00-0722,

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 6

1  corresponding to his claim of denial of equal protection, is fully exhausted under
2  the California Code of Regulations to the extent required by 42 U.S.C. § 1997e;
3  and (2) Plaintiff's appeals corresponding to his claims of retaliation and deliberate
4  indifference are fully exhausted or excusably unexhausted.

### A. The Prison Litigation Reform Act

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, provides:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983) or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also, McKinney v. Carey,* 317 F.3d 1798 (9th Cir. 2002) (holding that "this [statutory] language clearly contemplates exhaustion prior to the commencement of the action as an indispensable requirement"). Courts do not have discretion to excuse the exhaustion requirement. *Porter v. Nussle,* 534 U.S. 516, 524(2002). The exhaustion requirement applies to "all inmate suits about prison life." *Porter,* 534 U.S. at 532. Even when monetary damages are unavailable, an inmate still must exhaust administrative remedies . "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." *Booth v. Churner,* 532 U.S. 731, 741 (2001).

### B. Federal Rule of Civil Procedure 12(b) Motion to Dismiss

The exhaustion condition in the PLRA is an affirmative defense to be proved by the defendants, rather than a pleading requirement. *Wyatt v. Terhune,* 315 F.3d 1108, 1717-18 (9th Cir. 2003). A plaintiff who fails to exhaust non-judicial remedies that are not of a jurisdictional nature is subject to an unenumerated Rule 12(b) motion to dismiss. *Wyatt,* 315 F.3d at 1719; *see also, Ritza v. International Longshoremen's & Warehousemen's Union,* 837 F.2d 365, 368 (9th Cir. 1988).

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 7

### C. Exhaustion of Administrative Remedies

In deciding a motion to dismiss based on failure to exhaust non-judicial remedies, the court may look to facts beyond the pleadings. *Wyatt,* 315 F.3d at 1720. If the court finds that the prisoner has not exhausted all prison administrative remedies, the proper remedy is dismissal of the complaint without prejudice. *Id.* at 1720.

The Ninth Circuit has addressed the issue of what constitutes an exhausted appeal on the part of an inmate in *Butler v. Adams* 397 F.3d 1781 (9th Cir. 2005). The Circuit held that if an inmate utilizes the administrative process made available to him or her, and so long as that process is correctly followed through to its final level, then 42 U.S.C. § 1997e requires nothing more to satisfy exhaustion. *Butler,* 397 F.3d at 1783.

In *Butler,* the inmate plaintiff was blind, and appealed the CDC decision not to make reasonable accommodations for his disability. *Id.* at 1781. The inmate completed all levels of review and then filed a claim in federal district court. *Id.* at 1782. The reviewing magistrate found "defendants lacked specific notice of plaintiff's statutory claims against them. Therefore, the plaintiff has failed to exhaust the claim at issue in this action." *Id.* at 1783. The district court dismissed the case after adopting the magistrate's recommendation. *Id.*

On appeal, the Ninth Circuit found the appeals forms provided to the inmate did "not require identification of any specific person." *Id.* The form only required the inmate to "describe the problem" and "what specific modification or accommodation is requested." *Id.* Having done exactly that, at all levels of review, the inmate followed the administrative process provided as instructed and needed to do no more to exhaust his administrative remedies. *Id.* The Circuit reversed and remanded. *Id.*

Accordingly, under the PLRA, the Plaintiff is required to correctly exhaust all administrative remedies made available to him by the CDC before this Court

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 8

may hear any complaint filed against the Defendants. The Defendants have properly pleaded a Rule 12(b) motion to dismiss, setting forth evidence as to how Plaintiff has not fully exhausted his administrative remedies prior to filing his claim in the Court (Ct. Rec. 42).

### D. The CDC Administrative Appeals System

An inmate under the jurisdiction of the CDC may "appeal any departmental action, condition or policy which they can demonstrate has an adverse effect upon their welfare." CAL. CODE REGS. tit. 15 § 3084.1(a). The appeals process has a four-level structure: (1) Informal Level, (2) First Formal Level, (3) Second Formal Level, (4) Third Formal Level. *Id.* at § 3084.5(a-d).

At the informal level, the inmate and the staff involved with the complaint attempt to resolve the issue through an informal interview. *Id.* at (a). The Informal level is to be bypassed on appeal of "departmental regulations, policies, or operational procedures" and "alleged misconduct by a departmental peace officer." *Id.* at (a)(3)(D)(G)  At the First Formal Level, a formal written appeal is filed and screened; the appeal is reviewed by a department official who did not participate in the events being appealed and is not of lower rank than the participating staff. *Id.* at (b), (e). The Second Formal Level (for review of denial at the first level or for situation waiving the First Formal Level) is conducted by the institution head or the regional parole administrator, or their designee. *Id.* at (c),(e)(1). The Third Formal Level is to review issues not resolved in the Second Formal level and is conducted by a designated representative of the departmental director "under the supervision of the chief, inmate appeals." *Id.* at (d), (e)(2). Director's level decisions at the Third Formal level are not appealable and exhaust the inmate's administrative remedies. CAL. CODE REGS. tit. 15 § 3084.1(a).

#### 1. Plaintiff's Exhausted Appeal No. 00-0722

Appeal No. 00-0722 was initially filed on February 20, 2000. Both Plaintiff

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 9

1  and Defendants agree that the appeal forms were properly completed, submitted,
2  reviewed, and decided at all levels of review, pursuant to CAL. CODE REGS. tit.
3  15 § 3084.1 (Ct. Rec. 17, ex. C; Ct. Rec. 42, ex. B). Defendants point out
4  Plaintiff's original appeal listed only Defendants Abatti-Harlow and Fouch (Ct.
5  Rec. 42). Defendants Vasquez and Ursenbach were not named in the appeal until
6  Plaintiff submitted a Second Level review (Ct. Rec. 42). Both of these factual
7  assertions are true, according to the official prison forms of Appeal No. 00-0722
8  exhibited in the record (Ct. Rec. 17, ex. C; Ct. Rec. 42, ex. B).

Defendants argue that one purpose of the exhaustion requirement under 42 U.S.C. § 1997e is to afford corrections staff an opportunity to address and resolve complaints internally (Ct. Rec. 42); *citing, Porter,* 534 U.S. at 525. Based on the facts in this case, Defendants conclude that the exhaustion requirement is met only in regard to the Defendants named in the original appeal (Abatti-Harlow and Fouch) and not Defendants Vasquez and Ursenbach, since they did not have an opportunity to fully respond to claims against them internally (Ct. Rec. 42).

Defendants' assertion is incorrect. Under the Circuit's decision in *Butler,* Plaintiff needed only to exhaust the administrative process *as provided* by the CDC. *Butler,* 397 F.3d at 1783. Plaintiff is not required to do anything beyond this process to exhaust his non-judicial remedies on this issue. *Id.*

Internal appeals forms provided to Plaintiff only required that he "describe the problem" and declare the "action requested." (Ct. Rec. 17, ex. C; Ct. Rec. 42, ex. B.) Subsequent levels of review only require the Plaintiff to explain his dissatisfaction with the previous review process result, and invites him to add any additional information or material. *Id.* The forms provided do not require the Plaintiff to name specific individuals involved in the actions that form the basis of the complaint and appeal. *Id.* Plaintiff fully complied with the administrative process provided by the CDC in regard to Appeal No. 00-0722, and 42 U.S.C.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 10

§ 1997e requires that he do no more. *Id; Butler,* 397 F.3d at 1783.

This exhausted appeal addresses only the issue of Plaintiff's housing grievance, it does not state or discuss any grievance for retaliation (Ct. Rec. 17, ex. C). Therefore, this appeal has fully exhausted Plaintiff's administrative remedies only in regard to his § 1983 claim alleging that Defendants denied Plaintiff equal protection under the law by not complying with his housing requests. *Id.*

    2.    **Plaintiff's Unexhausted Appeals No.'s 00-1880, 00-1201, 00-00239, 99-03519, 99-03444**

Plaintiff refers in his complaint to several other appeals filed with the CDC relating to claims raised in his Second Amended Complaint (Ct. Rec. 17). However, nothing in the record indicates that these appeals have been fully exhausted through the Department's non-judicial administrative remedies.

Appeal No. 00-1201 regarding retaliatory deprivation of Plaintiff's outdoor (yard) privileges by Defendant Hernandez (Ct. Rec. 17, ex. Q). No. 00-1201 has not passed beyond the Second Formal level of review and has not been fully exhausted under the existing administrative remedies provided by the CDC. *Id.* Plaintiff argues that because he was transferred to another prison facility, he was unable to receive his response from the submitted Second Level appeal (Ct. Rec. 49). Plaintiff asserts that the failure of the CDC to deliver his Second Level decision to his new housing facility excused his need to exhaust all administrative remedies prior to filing suit (Ct. Rec. 49).

Plaintiff's assertion is incorrect. Courts do not have the discretion to excuse the exhaustion requirement on the grounds of "futility." *Porter v. Nussle,* 534 U.S. at 532. Although Plaintiff was moved and never received a Second Level decision, it does not excuse him from continuing to pursue his administrative remedies to exhaustion prior to filing suit. *Id.;* 42 U.S.C. § 1997e. Plaintiff's

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 11

claim of retaliation has not been fully exhausted under the available administrative remedies.

Plaintiff's appeals corresponding to the claim of deliberate indifference are similarly not fully exhausted (Ct. Rec. 17, ex. H). Additional appeals included in Plaintiff's complaint have little or no bearing on the claims made, and are nonetheless also unexhausted (Ct. Rec. 17, ex. M, N). Pursuant to 42 U.S.C. § 1997e, the Plaintiff may not file suit under any of these claims until they are fully exhausted under the administrative remedies provided by the CDC. 42 U.S.C. § 1997e.

### III.   FAILURE TO STATE A CLAIM, 28 U.S.C. § 1915(E)(2)

Courts of the United States may authorize a litigant to file a claim without prepayment of fees and securities if the litigant submits an affidavit stating he is financially incapable of paying such fees. 28 U.S.C. § 1915(a)(1). The court "shall dismiss the case if the court determines that . . . the action or appeal fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). "Dismissal for a failure to state a claim upon which relief can be granted is proper 'only if it is clear that no relief could be proved consistent with the allegations.'" *Cervantes v. City of San Diego,* 5 F.3d 1273, 1274 (9th Cir. 1993), *quoting, Hishon v. King and Spalding,* 467 U.S. 69, 73 (1984). In making this determination, all allegations of material fact must be taken as true, and construed in a manner most favorable to the plaintiff. *Tanner v. Heise,* 879 F.2d 572, 576 (1989). The Court must supply a plaintiff with a statement of the complaints deficiencies. *McGuckin v. Smith,* 974 F.2d 1050, 1055 (9th Cir. 1992). A *pro se* plaintiff will be given leave to amend his complaint unless it is clear the deficient complaint cannot be cured by such amendment. *Karim-Panahi v. Los Angelos Police Dept.,* 839 F.2d 621, 623 (9th Cir. 1988).

Given that the Plaintiff has exhausted his claim request relating to housing,

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 12

the Court must now determine whether the Plaintiff has stated a claim upon which relief can be granted.

### A.     Equal Protection Rights of Inmates

The Supreme Court has held that "federal courts sit not to supervise prisons but to enforce the constitutional rights of all 'persons,' including prisoners." *Cruz v. Belo,* 405 U.S. 319, 321 (1972). The Equal Protection Clause of the Fourteenth Amendment holds that a state shall not deny to any person equal protection of the law. U.S. Const. amend. XIV, *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439 (1985). The Supreme Court holds this is "essentially a direction that all persons similarly situated should be treated alike." *Id.*

CDC prison facilities are fully racially-integrated, and the California Code of Regulations specifies "inmates, parolees and employees will not subject other persons to any form of discrimination because of race, religion, nationality, sex, political belief, age or physical or mental handicap." CAL. CODE REGS. tit. 15 § 3004(c). The Supreme Court recently held that any inmate housing policy based on racial segregation would have to meet a strict scrutiny analysis in order to avoid not violating the affected prisoners' equal protection rights. *Johnson v. California,* 125 S. Ct. 1141, 1145 (2005). Prison housing policies and regulations must treat all prisoners the same as "similarly situated" individuals regardless of race, unless the policy or regulation can meet strict scrutiny. *E.g., Id.*

After their initial intake, inmates may request a specific cellmate and such a request is usually granted unless there is some security reason for denying the request. *Johnson,* 125 S. Ct. at 1145. However, "[m]any of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration." *Overton v. Bazzetta,* 539 U.S. 126, 131 (2003). The liberty to live with whomever you choose wherever you choose is a right prisoners no longer enjoy, being among the

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 13

"rights least compatible with incarceration." *Id; see also, Jones v. North Carolina Prisoners' Labor Union, Inc.* 433 U.S. 116, 125-126 (1977). Subsequently, although CDC policy allows all prisoners to request a specific cellmate, the CDC generally cannot establish a policy, or encourage a state amongst the prisoners, of racial segregation. *Johnson,* 125 S. Ct. at 1145.

### 1. Validity of Plaintiff's Equal Protection Claim

Plaintiff claims that the Defendants' refusal to grant his request to be housed with inmates of like ethnicity was discriminatory, as other prisoners were allowed to live "with their own races." (Ct. Rec. 17.) Construing his claim liberally, Plaintiff is asserting that the denial of his housing request violated his Equal Protection rights because he was treated dissimilarly from other ethnic categories of inmates whose requests were granted (Ct. Rec. 17).

Even if Plaintiff's complaint contains an Equal Protection claim, the remedy he seeks would force the CDC to engage in unconstitutional behavior. *Johnson,* 125 S. Ct. at 1145. Plaintiff's claim would urge this Court to validate a policy whereby inmates could create and enforce racially-segregated prison housing, simply by requesting it (Ct. Rec. 17). To do so would be contrary to the Supreme Court's ruling that racial segregation in prisons is generally intolerable, and any such policy must meet strict scrutiny to avoid violating inmates' constitutional rights. *Johnson,* 125 S. Ct. at 1145.

It is immaterial that, historically, the CDC may have granted race-based housing requests (Ct. Rec. 17). The remedy that Plaintiff seeks would require the CDC to allow racial segregation as a housing determination in the prison population, an action the Supreme Court has found to be presumptively unconstitutional. *Johnson,* 125 S. Ct. at 1145 (Ct. Rec. 17). A claim that requires an unconstitutional remedy is a claim upon which no relief can be granted.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 14

Having reviewed the record, heard from counsel, and been fully advised in this matter, **IT IS HEREBY ORDERED:**

1. Defendants' motion to dismiss is **GRANTED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and forward copies to counsel and to Plaintiff.

**DATED** this 22 day of April 2005.

_____
ROBERT H. WHALEY
United States District Judge

Q:\FRESNO CASES\Garcia\garcia.grant.order.wpd

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 15